UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BERNARD DAVID GOLD,

        Plaintiff,

v.                                  Case No: 2:16-cv-73-FtM-29MRM

GEO GROUP INC., Operator of
GEO, MIKE CARROLL, Secretary
DCF, GEORGE ZOLEY, GEO Group
Inc.,      KRISTIN      KANNER,
Director SVP, DONALD SAWYER,
Dr., Facility Director FCCC,
CHRIS      CATRON,      Security
Director   FCCC,      WILLIAM
PRICE, Health Administrator
FCCC,  BRIAN  MASONY,  DCF
Attorney FCCC, and REBECCA
JACKSON,

        Defendants.

_____

### OPINION AND ORDER

This matter comes before the Court upon the following:

    The motion to dismiss Plaintiff's amended
    complaint filed by Defendants Chris Catron,
    Rebecca Jackson, Brian Masony, William Price,
    and Donald Sawyer (Doc. 62, filed August 12,
    2016);

    The motion to dismiss Plaintiff's amended
    complaint filed by Defendants Mike Carroll and
    Kristin Kanner (Doc. 63, filed August 12,
    2016); and

    The motion to dismiss Plaintiff's amended
    complaint filed by GEO Group, Inc. and George
    Zoley (Doc. 65, filed September 14, 2016).

Although directed to do so (Doc. 66), Plaintiff did not respond to the motions to dismiss, and the time to respond has passed.[1] Therefore, the motions are ripe for review.

For the reasons set forth in this Order, the defendants' motions to dismiss are **GRANTED**, and Plaintiff's amended complaint is dismissed.

## I.   Background and Procedural History

Plaintiff, proceeding *pro se*, is a civil detainee at the Florida Civil Commitment Center ("FCCC") in Arcadia, Florida.[2]   On January 14, 2016, Plaintiff and eighteen other residents and former residents of the FCCC filed a putative class action complaint in

---

[1] Plaintiff's failure to respond does not compel an automatic abandonment by silence dismissal in the face of a motion to dismiss. See Gailes v. Marengo Sheriff's Dep't, 916 F. Supp. 2d 1238 (S.D. Ala. 2013) (discussing whether a plaintiff's failure to address an issue raised in a motion to dismiss constitutes abandonment and warrants dismissal, and concluding that it does not). However, as noted in Gailes, a plaintiff who "fails to address a claim challenged by a defendant does so at its peril, both because the Court may not detect defects in the defendant's position that would prevent it from meeting its initial burden and because, once that burden is satisfied, the Court will not on its own raise arguments to counter the defendant's case." Id. at 1244 n.12. In other words, this Court will not deny a motion to dismiss based on arguments Plaintiff could have made, but elected not to.

[2] Florida's Involuntary Civil Commitment for Sexually Violent Predators Act was enacted in Florida "to create a civil commitment procedure for the long-term care and treatment of sexually violent predators." Fla. Stat. § 394.910, et seq.  A person who is found, after a hearing, to be a "sexually violent predator" is "committed to the custody of the Department of Children and Family Services for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Id. at § 394.917.

Case No. 2:16-cv-35-FtM-99MRM challenging the constitutionality of the Florida statutes governing the civil commitment of sexually violent predators and raising a litany of additional individual-specific claims regarding the residents' treatment at the FCCC (Doc. 1).  This Court denied class certification and dismissed the action without prejudice for failure to state a claim upon which relief could be granted (Doc. 2).   However, each individual plaintiff was permitted to file his own separate amended complaint. Id.

## II.  **Pleadings**

### **Complaint**

Plaintiff filed the instant amended complaint on March 23, 2016 (Doc. 11).  Instead of writing his own complaint, specific to his particular circumstances, Plaintiff appears to have cut and pasted portions of the original "class-action" complaint filed on January 16, 2016 in Case No. 2:16-cv-35-FtM-99MRM, along with verbiage taken directly from a June 15, 2015 order issued by the United States District Court of the District of Minnesota.  See Karsjens v. Jesson, 109 F. Supp. 3d 1139 (D. Minn. 2015) (finding portions of the Minnesota statutes governing civil commitment and treatment of sex offenders to be unconstitutional on their face and as applied).

Plaintiff's complaint is difficult to understand.  He generally alleges that the Florida statutes governing the civil

commitment of sexually violent predators ("Florida SVP statutes") are unconstitutional and suggests ways they could be made better. Plaintiff also makes vague and non-specific allegations regarding the treatment provided to various "class members" at the FCCC and avers that the named defendants are liable in their individual capacities for adhering to the unconstitutional statutes. However, most of the allegations appear to actually be directed towards the Minnesota SVP statutes at issue in Karsjens—not the Florida SVP statutes.  In fact, Plaintiff merely copies and paraphrases entire sections of the Minnesota district court's conclusions in Karsjens and raises each of the Karsjens court's stated conclusions as a claim in the instant case, notwithstanding that the Minnesota statutes at issue are quite dissimilar to the Florida SVP statutes (Doc. 11 at 18-20); Karsjens, 109 F.Supp.3d at 1173-74.

To wit, Plaintiff alleges that the Florida SVP statutes are not narrowly tailored because: (1) they "indisputably [fail] to require periodic risk assessments"; (2) they fail to provide a "judicial bypass mechanism" to challenge his ongoing commitment; (3) "the statutory discharge criteria is more stringent than the statutory commitment criteria"; (4) they authorize "the burden to petition for a reduction in custody to impermissibly shift from the State" to Plaintiff; (5) they require civilly committed individuals to show by clear and convincing evidence that a less

- 4 -

restrictive alternative is appropriate; and (6) they do not require the defendants to take any affirmative action, such as petition for a reduction in custody when they no longer satisfy the criteria for continued commitment (Doc. 11 at 19).

Plaintiff also urges that the statutes are unconstitutional as applied because: (7) Defendants Kanner, Zoley, Carroll, Sawyer, and Jackson do not conduct periodic risk assessments of civilly committed people at the FCCC; (8) the risk assessments that have been performed since the opening of the FCCC have not all been done in a constitutional manner; (9) Plaintiff has remained confined at the FCCC even though he has completed treatment or sufficiently reduced his risk of reoffending; (10) discharge procedures are not working properly at FCCC; (11) although the Florida SVP statutes expressly allow the referral of committed individuals to less restrictive alternatives, this is not occurring in practice; (12) although treatment has been made available, the treatment program's structure has been an institutional failure and there is no meaningful relationship between the treatment program and an end to indefinite detention; (13) his due process rights were violated when the probable cause hearing was held without the presence of him or his attorney; (14) Plaintiff's Equal Protection rights were violated "because his liberty has been implicated as a result of Fla. Stat. § 394 Part V being unconstitutional on its face because the defendants use

"the statute to punishing and/or detain 'Male' sex offenders after completion of their prison sentence and not applying [sic] the same standard to 'Female' sex offenders for their past and present sexual violent offenses"; and (15) the defendants have violated Plaintiff's rights to access the courts by refusing to supply him with postage stamps for mailing legal materials to court. (Doc. 11 at 22-23).[3]

As relief, Plaintiff requests that "substantial changes be made to Florida's sex offender civil commitment scheme," and he seeks two million dollars in punitive and compensatory damages (Doc. 11 at 25-27).

## Motions to Dismiss

All three motions to dismiss generally assert that Plaintiff's amended complaint contains vague, confusing allegations that simply do not make sense, preventing any defendant from properly addressing the allegations raised against them (Doc. 62; Doc. 63; Doc. 65). The motions also urge that the amended complaint should be dismissed because it failed to comply with the Court's earlier order to amend. Id. Defendants Carroll and Kanner argue that, to the extent the Court considers the claims in the

---

[3] The remainder of the complaint is confusing and repetitive and appears to raise claims unrelated to Plaintiff. To the extent Plaintiff intended to raise claims not addressed in this Order, they are dismissed for failure to state a claim on which relief can be granted and as violative of Rules 8 and 10 of the Federal Rules of Civil Procedure.

amended complaint on their merits, they are entitled to qualified immunity and Eleventh Amendment immunity (Doc. 65 at 13-17). Defendants Carroll and Kanner also argue that they are entitled to dismissal of the claims against them because the lawsuit is based solely upon their supervisory roles, and respondeat superior liability is not addressable under 42 U.S.C. § 1983. Id. at 18-19.

### III. Standard of Review for Motions to Dismiss

When considering a Rule 12(b)(6) motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court, referring to its earlier decision in Bell Atlantic Corp. v. Twombly, illustrated a two-pronged approach to motions to dismiss. First, a reviewing court must determine whether a Plaintiff's allegation is merely an unsupported legal conclusion that is not entitled to an assumption of truth.  Next, the court must determine whether the complaint's factual allegations state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 679.

In the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers. Hughes v. Rowe, 449 U.S. 5, 9 (1980).

### IV.  Analysis

As argued by the defendants, Plaintiff's failure to describe in sufficient detail the unconstitutional actions taken by the individual defendants makes it impossible for these defendants to meaningfully reply to, or otherwise defend against, the allegations against them.  In fact, it is unclear why Defendant Masony is even named in the complaint given that he is not mentioned anywhere except the styling and in his job description (Doc. 11 at 4).  Notably, the Court addressed Plaintiff's pleading

failures in its earlier order dismissing the putative class action claims in case No. 2:16-cv-35-FtM-99MRM (Doc. 2), and Plaintiffs was provided explicit instructions on how to amend his individual complaint:

> Plaintiff has submitted the type of pleading the Federal Rules of Civil Procedure are designed to prevent. Rule 8 requires a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (quoting Twombly, 550 U.S. at 555)). Rule 10 further provides, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]" Fed. R. Civ. P. 10(b). Rules 8 and 10 work together and "'require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.'" Fikes v. City of Daphne, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted).
>
> Here, the Complaint represents a confusing mixture of allegations, relevant facts, irrelevant facts, disjointed narrative, conclusory accusations, and legal argument. (Doc. 1). Moreover, hundreds of pages of un-labeled documents are attached in an appendix. The plaintiffs do not separate the causes of action, making it difficult to decipher the precise claims and against whom the claims are brought. In fact, the plaintiffs do not even name most of the defendants in the body of the

complaint, much less associate them with any
specific claim.   It is the type of pleading
that renders it impossible for a defendant to
answer and must be dismissed under Rule 8 for
that reason.

Finally, many of the claims raised in the
instant complaint appear to be unrelated to
each other.   For example, the plaintiffs'
claims that Florida's civil commitment statutes
are unconstitutional are not related to claims
of inadequate medical care or fraud by FCCC
staff members.     Unrelated claims against
different defendants belong in different suits.
If claims are not related to the same basic
issue or incident, then each must be raised in
a separate suit to prevent confusion and to
ensure that the plaintiffs pay the required
filing fees. See George v. Smith, 507 F.3d 605,
607 (7th Cir. 2007) ("Unrelated claims against
different defendants belong in different suits,
not only to prevent the sort of morass that this
50-claim, 24-defendant suit produced but also
to ensure that [plaintiffs] pay the required
filing fees[.]").

(Doc. 2 at 6-7).   Despite clear instructions regarding his

obligation to submit a cogent, decipherable complaint, Plaintiff

merely cut and pasted portions of the prior class-action complaint

to the amended complaint without complying with the order to amend

and without explaining exactly how each named defendant is alleged

to have violated his constitutional rights.   Although the Court

is required to liberally construe a *pro se* complaint, neither the

Court nor the defendants are required to comb through an

incomprehensible pleading in order to cobble together a claim on

Plaintiff's behalf. See GJR Investments, Inc. v. County of

Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998) ("[t]his leniency

does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action[.]") (citations omitted), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010).  Where, as here, a complaint amounts to a "labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension," dismissal is appropriate. Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir. 1972); Baron v. Complete Mgt., Inc., 260 F. App'x 399, 400 (2d Cir. 2008) (affirming dismissal of complaint described as "virtually unintelligible" and "frivolous and harassing").  This is particularly true when, as here, the plaintiff was given an opportunity to amend his deficient pleading and detailed instructions on how to do so. See Marantes v. Miami-Dade County, 649 F. App'x 665, 673 (11th Cir. 2016) ("[O]ur case law does not require a district court to give a pro se litigant multiple opportunities to amend."); Friedlander v. Nims, 755 F.2d 810, 811–12 (11th Cir. 1985) (stating that dismissal with prejudice was appropriate [for pro se litigants] where the district court gave "specific and repeated warnings" that amendment was necessary), abrogated as to represented litigants by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002).

Although the amended complaint is subject to dismissal due to Plaintiff's failure to adhere to the Court's instructions regarding amendment, the gravamen of the complaint, as well as

several other similar complaints filed in this district, is that the Florida SVP statutes are constitutionally infirm. <u>See</u> MDFL Case Nos. 2:16-cv-75-SPC-CM, 2:16-cv-267-UA-MRM, 2:16-cv-59-UA-MRM, 2:16-cv-62-JES-MRM, 2:16-cv-72-UA-CM, and 2:16-cv-74-SPC-CM. Plaintiff does not direct this court to any specific portion of the Florida SVP statutes that he believes is unconstitutional. Instead, each time he refers to the statutes, he cites to Florida Statutes §§ 394-910-394.931, which encompasses all of Part V of The Mental Health Chapter of the Florida Statutes addressing "Involuntary Civil Commitment of Sexually Violent Predators." Notably, Plaintiff was provided an opportunity to respond to the motions to dismiss in order to clarify his claims, but he chose not to do so.  Plaintiff's failure to specifically identify the portions of the Florida SVP statutes alleged to be unconstitutional hampers this Court in evaluating his amended complaint.

The allegations appear to be based upon the <u>Karsjens</u> court's findings that portions of the Minnesota SVP statues are facially unconstitutional. Plaintiff appears to believe that the Florida SVP statutes are either identical to, or similar enough to, the Minnesota SVP statutes that the Minnesota court's analysis applies equally to the Florida SVP statutes.  This assumption is incorrect.  Therefore, without commenting on the Minnesota district court's conclusions regarding the Minnesota SVP statutes,

the Court will briefly address Plaintiff's allegations regarding the facial unconstitutionality of the Florida SVP statutes.

1. **Unlike the Minnesota SVP statutes at issue in <u>Karsjens</u>, Florida Statute § 394.915 provides that a petitioner is entitled to be present and to be represented by counsel during his probable cause hearing**

Plaintiff argues that the Florida SVP statutes are unconstitutional because they do not recognize the right of a person deemed to be a sexually violent predator to be present and to be represented by counsel at his probable cause hearing (Doc. 11 at 20). Plaintiff asserts the following:

> Plaintiff *Bernard David Gold*, has been harmed and his liberty has been infringed upon as a result of all the Defendant's actions under the color of State and Federal law. For example, prior to his release from incarceration pursuant to sections §§ 394.910-394.931 Fla. Stat.[,] the State Attorney office filed a petition to declare him a sexually violent predator and petition the court for an Ex Parte hearing to determine probable cause exist to determine that he is too dangerous to be released after completion of his prison sentence without affording him due process however, the hearing was conducted without him nor was his attorney present, thus resulting in the denial of his due process rights to confront his accuser or contest the allegations against them.

(Doc. 11 at 6-7). Although this statement appears to accurately describe Minnesota Statute § 253D.07 as it relates to a probable cause hearing,[4] it is untrue as it relates to the Florida SVP

---

[4] Under the Minnesota SVP statute, a county attorney, upon a determination of good cause, may petition a court "that a proposed

statutes.    In  Florida,  a  person  suspected  of  being  a  sexually violent predator has the right to appear in person at the probable cause hearing and to be represented by counsel. See Fla. Stat. §§ 394.915(2)  and  (2)(a)  (stating  that  the  person  against  whom  the probable  cause  hearing  is  directed  "shall  be  provided  with  notice of,  and  an  opportunity  to  appear  in  person  at,  an  adversarial hearing"  and  has  the  right  to  be  represented  by  counsel  at  the hearing).

Accordingly,  any  claims  based  upon  allegations  that  the probable  cause  hearings  as  described  in  the  Florida  SVP  statutes are  unconstitutional  (because  they  are  conducted  ex  parte  and without the benefit of counsel) are dismissed for failure to state a  claim  upon  which  relief  may  be  granted.    Likewise,  any  claims against  the  individual  defendants  based  upon  their  adherence  to the  Florida  SVP  statutes  as  they  relate  to  the  probable  cause hearing  are  dismissed  for  failure  to  state  a  claim  upon  which relief may be granted. Fed. R. Civ. P. 12(b)(6).

---

respondent is a sexually dangerous person or a person with a sexual psychopathic personality[.]" Minn. Stat. § 253D.07 (1) and (2). Thereafter, if the court finds by clear and convincing evidence that the respondent is a sexually dangerous person or a person with a sexual psychopathic personality, the court "shall order commitment for an indeterminate period of time[.]" Unlike the Florida SVP statute, no provision is made for the presence of the respondent or his attorney at these hearings. See Minn. Stat. §§ 253D.07(2) and (3).

**2.    The Florida SVP statutes require periodic assessments of a civil detainee's mental condition and provide for judicial review of the assessments at the detainee's request**

Plaintiff urges that the Florida SVP statutes are unconstitutional because they do not require periodic risk assessments of a civil detainee's mental condition (Doc. 11 at 19). Also, presumably relying on <u>Karsjens</u>, Plaintiff urges that the Florida SVP statutes "contain[] no judicial bypass mechanism and, as such, there is no way for Plaintiff, *Bernard David Gold*, to timely and reasonably access the judicial process outside of the statutory discharge process to challenge his ongoing commitment." <u>Id.</u>

Unlike the Minnesota SVP statutes at issue in *Karsjens*, the Florida SVP statutes provide for periodic assessments of a civil detainee's mental condition and for judicial review at the civil detainee's request at any time after commitment. Specifically, Florida Statute § 394.918 provides:

> **A person committed under this part shall have an examination of his or her mental condition once every year or more frequently at the court's discretion.** The person may retain or, if the person is indigent and so requests, the court may appoint, a qualified professional to examine the person. Such a professional shall have access to all records concerning the person. The results of the examination shall be provided to the court that committed the person under this part. Upon receipt of the report, the court shall conduct a review of the person's status.

The department shall provide the person with annual written notice of the person's right to petition the court for release over the objection of the director of the facility where the person is housed. The notice must contain a waiver of rights. The director of the facility shall forward the notice and waiver form to the court.

The court shall hold a limited hearing to determine whether there is probable cause to believe that the person's condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged. The person has the right to be represented by counsel at the probable cause hearing and the right to be present. Both the petitioner and the respondent may present evidence that the court may weigh and consider. If the court determines that there is probable cause to believe it is safe to release the person, the court shall set a trial before the court on the issue.

At the trial before the court, the person is entitled to be present and is entitled to the benefit of all constitutional protections afforded the person at the initial trial, except for the right to a jury. The state attorney shall represent the state and has the right to have the person examined by professionals chosen by the state. At the hearing, the state bears the burden of proving, by clear and convincing evidence, that the person's mental condition remains such that it is not safe for the person to be at large and that, if released, the person is likely to engage in acts of sexual violence.

Fla. Stat. §§ 394.918(1)-(4) (emphases added).   The Florida SVP

statutes further provide:

**A person is not prohibited from filing a petition for discharge at any time after commitment under this part.** However, if the person has previously filed such a petition

> without the approval of the secretary or the
> secretary's designee and the court determined
> that the petition was without merit, a
> subsequent petition shall be denied unless the
> petition contains facts upon which a court
> could find that the person's condition has so
> changed that a probable cause hearing is
> warranted.

Fla. Stat. § 394.920 (emphasis added).  Accordingly, unlike the
Minnesota statutes at issue in Karsjens, the Florida SVP statutes
provide for both mandatory periodic reviews of a civil detainee's
mental condition and allow for more frequent reviews at the court's
discretion.  Id.  The Florida SVP statutes also allow a detainee
to petition the court for release over the objection of the
facility's director and at any time thereafter.  Id.

Accordingly, the Florida statutes do not suffer from the same
defects as the Minnesota statutes at issue in Karsjens and any
claims based upon allegations that the Florida SVP statutes are
unconstitutional because they do not provide for period
assessments of a detainee's mental condition or a "judicial by-
pass mechanism" are due to be dismissed for failure to state a
claim upon which relief may be granted.  Likewise, any claims
against individual defendants based upon their adherence to
Florida Statute § 394.920 are also dismissed for failure to state
a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

3.   **The statutory discharge criteria under the Florida SVP statutes comports with due process**

Plaintiff asserts that the Florida SVP statutes are unconstitutional because the statutory discharge criteria for a civilly committed person are more stringent than the statutory commitment criteria (Doc. 11 at 12-13).  Specifically, he claims:

> To be discharged from FCCC, Fla. Stat. § 394.910-394.931 requires that Plaintiff, *Bernard David Gold*, "no longer be dangerous" as opposed to being "highly likely to reoffend," which is the initial commitment standard however, the statute does not state the same for non-committed residents who are treated differently.  Although Plaintiff, *Bernard David Gold*, may be initially committed to FCCC on no proof of being "highly likely to engage in harmful sexual conduct" in the future, *Bernard David Gold* is prohibited from being discharged unless he demonstrates, among other things, that he is no longer dangerous. Because the statute renders discharge of *Bernard David Gold*, from the FCCC more onerous than admission to Fla. Stat. §§ 394.910-394.931 it is not narrowly tailored and results in a punitive effect and application contrary to the purpose of civil commitment.

(Doc. 11 at 13) (emphases in original).  Again, the statement is simply untrue and appears to be taken (albeit incompletely) from Karsjens. See Karsjens, 109 F. Supp.3d at 1169.[5]

Under the Florida SVP statutes, a person is subject to civil commitment as a sexually violent predator if a court or a unanimous

---

[5] The Karsjens court concluded that the Minnesota SVP statutes were unconstitutional because the statutes "render[] discharge from the MSOP more onerous than admission to it[.]" Karsjens, 109 F. Supp. 3d at 1169.

jury finds, by clear and convincing evidence, that the person is a sexually violent predator. Fla. Stat. § 394.917.  A "sexually violent predator" is any person who has been convicted of a sexually violent offense as defined by Florida Statute § 394.912(9) and "[s]uffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." Fla. Stat. § 394.912(10).  After commitment, the civil detainee is entitled to a release trial when there is probable cause to believe that his condition is "so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged." Fla. Stat. § 394.918(3).  The State then bears the burden at trial of proving by clear and convincing evidence, "that the person's mental condition remains such that it is not safe for the person to be at large **and** that, if released, the person is likely to engage in acts of sexual violence." Fla. Stat. § 394.918(4) (emphasis added). These criteria are constitutionally sound.

The United States Supreme Court has clarified that the purpose of civil commitment "is to treat the individual's mental illness and protect him and society from his potential dangerousness." Jones v. United States, 463 U.S. 354, 368 (1983).  A state may confine a mentally ill person if it shows that the individual is both mentally ill *and* dangerous. Foucha v. Louisiana, 504 U.S. 71,

80 (1992).  Accordingly, it is axiomatic that a civilly committed person is entitled to release when he has recovered his sanity or is no longer dangerous. O'Conner v. Donaldson, 422 U.S. 563, 575 (1975) (noting that an involuntary commitment cannot constitutionally continue after the basis for it no longer exists). Unlike the Minnesota SVP statutes at issue in Karsjens,[6] the Florida SVP statutes require the state to prove that a civil detainee is both still mentally ill and poses a danger to society if released; otherwise, the detainee is entitled to release. Fla. Stat. § 394.918(4).  Accordingly, the Florida SVP statutes comport with the due process as it relates to release criteria. See Kansas v. Hendricks, 521 U.S. 346, 358 (1997) ("We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor such as mental illness or mental abnormality") (internal quotations omitted).

Any claims predicated upon the alleged facial unconstitutionality of the Florida SVP statutes as they relate to release criteria are dismissed for failure to state a claim upon which relief may be granted.  Likewise, the claims against the

---

[6] Notably, under the Minnesota statute, a person who is no longer mentally ill, but still a danger to the public could not be released. See Minn. Stat. § 253D.31.  This appears to run afoul of the Supreme Court's statements in Foucha and Hendricks. See Foucha, 504 U.S. at 80 and Hendricks, 521 U.S. at 358 (both holding that proof of dangerousness must be coupled with a finding of mental illness to justify continued civil detention).

individual defendants based upon their adherence to the Florida
SVP statutes as they relate to release criteria are dismissed for
failure to state a claim upon which relief may be granted.  Fed.
R. Civ. P. 12(b)(6).

> ### 4. The Florida SVP statutes do not impermissibly shift the burden of proof to the detainee to prove that he is entitled to release

Plaintiff argues that the Florida SVP statutes are not
narrowly tailored because "the statute impermissibly places the
burden on him and non-committed individuals to demonstrate that
they should be placed in a less restrictive setting[.]" (Doc. 11
at 13).[7]  Under the Minnesota SVP statutes, "[t]he petitioning
party seeking discharge or provisional discharge bears the burden
of going forward with the evidence, which means presenting a prima
facie case with competent evidence to show that the person is
entitled to the requested relief." Minn. Stat. § 253.28, subd.
2(d).   In Karsjens, the court found this provision to be
unconstitutional because "the burden of demonstrating the
justification for continued confinement by clear and convincing

---

[7] Plaintiff admits that the Florida SVP statutes do not
contemplate any less restrictive settings than commitment to the
FCCC for people who are deemed to be sexually violent predators,
but urges that the conditional release and probation provisions of
the Florida criminal statutes should apply to the civilly committed
(Doc. 11 at 13).  However, they do not.  Thus, Plaintiff makes the
illogical assertion that a non-existent portion of the Florida SVP
statutes is unconstitutional.

evidence should remain on the state at all times." 109 F. Supp. 3d at 1169.

To the extent Plaintiff asserts that the Florida SVP statutes also place the burden on the detainee to show his entitlement to release, this is simply not true.  Under the Florida SVP statutes, "the **state** bears the burden of proving, by clear and convincing evidence, that the [detainee's] mental condition remains such that it is not safe for the person to be at large and that, if released, the person is likely to engage in acts of sexual violence." Fla. Stat. § 394.918(4) (emphasis added).

Accordingly, any claims challenging the facial constitutionality of the Florida SVP statutes as they relate to the detainees' burden of proof are dismissed for failure to state a claim upon which relief may be granted.  Likewise, the claims against the individual defendants based upon their adherence to the Florida SVP statutes as they relate to a detainee's burden of proof are dismissed for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

> **5.**  **The Florida SVP statutes require the Secretary of the Department of Children and Families or the Secretary's designee to authorize a detainee to petition the court for release if it is determined that the person is not likely to commit acts of sexual violence if discharged**

Plaintiff asserts that the Florida SVP statutes "do[] not require the Defendants to take affirmative action, such as petition for a reduction in custody on behalf of Plaintiff, *David Bernard*

*Gold* and individuals who no longer satisfy the criteria for continued commitment." (Doc. 11 at 19).  This claim appears to be predicated on <u>Karsjens</u>, which determined that the Minnesota SVP statutes' "failure to require the state to petition for reduction of custody, on behalf of individuals who no longer satisfy the criteria for continued commitment" was a "fatal flaw" rendering the statutes unconstitutional. 109 F. Supp. 3d at 1169-70.

However, in contrast to the Minnesota SVP statutes, the Florida SVP statutes provide that:

> If the secretary or the secretary's designee at any time determines that the person is not likely to commit acts of sexual violence if discharged, the secretary or the secretary's designee **shall authorize** the person to petition the court for release. The petition shall be served upon the court and the state attorney. The court, upon receipt of such a petition, shall order a trial before the court within 30 days, unless continued for good cause.

Fla. Stat. § 394.919(1) (emphasis added).  By its clear terms, § 394.919(1) requires the state to take affirmative action, in the form of authorizing the detainee to petition the court for release, if it is determined that a detainee may be entitled to release. Therefore, the Florida SVP statutes do not suffer from the same defect at issue in <u>Karsjens</u>.

Accordingly, any claim challenging the facial constitutionality of the Florida SVP statutes as they relate to the defendants' requirement to take affirmative action on behalf

of individuals who no longer satisfy the criteria for continued commitment are dismissed for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).

**6. Plaintiff has not stated an Equal Protection claim**

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  The Supreme Court has expressed that there is "a strong presumption that gender classifications are invalid" under the Equal Protection Clause. J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 152 (1994). Plaintiff asserts that his Fourteenth Amendment equal protection rights have been violated by the defendants because:

> [H]is liberty has been implicated as a result of Fla. Stat. § 394 Part V. being unconstitutional on its face as the result of Defendants, Kristin Kanner, George Zoley, Mike Carroll, Dr. Donald Sawyer, and Dr. Rebecca Jackson, and State Attorney utilizing the statute to punishing and/or detain "Male" sex offenders after completion of their prison sentence and not applying the same standard to "Female" sex offender for their past and present sexual violent offenses.

(Doc. 11 at 20).  Accordingly, Plaintiff appears to allege that Florida's SVP statutes do not apply the same standards to female sex offenders who commit the same types of crimes as male sex offenders. Id. at 23.

Plaintiff provides no factual assertions to support this conclusory claim, and his legal conclusion, in terms of the wording

of the statute, is false.  Florida's SVP statutes do not target "men," but rather "sexually violent predators."  Fla. Stat. § 394.912(10).  Sexually violent predators are not a protected class under the Fourteenth Amendment's Equal Protection Clause.  When a statutory scheme does not specifically classify based on a suspect class (such as persons of a certain race, alienage, religion, gender, or national origin), "uneven effects upon" suspected classes "are ordinarily of no constitutional concern." Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 272 (1979).  The Fourteenth Amendment "guarantees equal laws, not equal results." Id. at 273.

Still, "when a neutral law has a disparate impact" on a suspect class "an unconstitutional purpose may still be at work," and the Court does not doubt that Florida's SVP statutes have almost exclusively affected men.  Feeney, 442 U.S. at 273.  However, in order to state a viable disparate impact claim, a claimant must prove that the intention of the law was to discriminate against a suspect class. M.L.B. v. S.L.J., 519 U.S. 102, 135 (1996).  If the impact of a law "could not be plausibly explained on a neutral ground, impact itself would signal that the real classification made by the law was in fact not neutral." Feeney, 442 U.S. at 275.

In this case, the legislature's intent in creating the Florida SVP statutes was to "create a civil commitment procedure for the

long-term care and treatment of sexually violent predators." Fla.
Stat. § 394.910.  The Florida SVP statutes' primary purpose is to
protect the public and treat sexually violent predators.  <u>Id.</u>
These purposes are entirely plausible and rationally related to a
legitimate state interest.  Any assertion that Florida's SVP
statutes target the male gender with respect to anything other
than the proclivity of some males to be sexually violent predators
is untenable.  If a woman is determined to be a sexually violent
predator, the clear terms of the Florida SVP statutes would apply
to her as well. <u>Id.</u>  To imply that the Florida Legislature passed
the statutes in order to fulfill a discriminatory animus it harbors
against men is speculative and implausible.  Furthermore, given
the gender neutral language of the Florida SVP statutes,
Plaintiff's complaint rests on a legal conclusion, i.e. the
statutes (and defendants) "do not apply the same standard[s] to
female sex offenders," but he provides no facts in support thereof.
Therefore, Plaintiff has not stated an equal protection claim, and
his equal protection claim is dismissed for failure to state a
claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

   **7.  Plaintiff has not stated a claim with regard to postage
       stamps**

   Plaintiff makes the conclusory assertion that "Defendants,
Kristin Kanner, George Zoley, Mike Carroll, Dr. Donald Sawyer, and
Dr. Rebecca Jackson, FCCC has [sic] violated Plaintiff, *Bernard*

*David Gold's* indigent Residents/Detainee access to court by refusing to supply them [sic] with postage for the mailing of legal materials to court." (Doc. 11 at 20).   In his request for relief, he seeks an order for the FCCC to supply all indigent civil detainees with postage to mail legal materials to court. Id. at 23.

Interference with a detainee's access to the court constitutes a First Amendment violation. Lewis v. Casey, 518 U.S. 343 (1996); Bounds v. Smith, 430 U.S. 817 (1977); Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991).   The Supreme Court in Bounds made clear that institutions must ensure that inmates have "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Id. at 825. Additionally, the Supreme Court explained that a plaintiff who alleges a denial of access to court must show how the interference caused the plaintiff harm or prejudice with respect to the litigation. Lewis, 518 U.S. at 349-351. "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. at 351.   Indeed, "the injury requirement is not satisfied by just any type of frustrated legal claim." Id. at 354.   Specifically, a plaintiff must show that the denial of access to court prejudiced him in a criminal appeal, post-conviction matter, or in a civil rights action under 42 U.S.C. §

1983 "to vindicate 'basic constitutional rights.'" Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 579 (1974)).

Plaintiff makes no factual allegations supporting an interference with an access to court claim.  Nor has he alleged facts explaining how any named defendant's interference with his access to the courts prejudiced him in any legal matter. Accordingly, any First Amendment access claim is dismissed for failure to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6).

## V.   Conclusion

Plaintiff's amended complaint (Doc. 11) is subject to dismissal due to his failure to comply with this Court's order regarding amendment.  In addition, Plaintiff's claims related to the constitutionality of the Florida SVP statutes are subject to dismissal for failure to state a claim on which relief can be granted.  Because all claims are dismissed, the Court will not address Defendants Carroll's and Kanner's arguments regarding qualified immunity, Eleventh Amendment immunity, and respondeat superior liability.

Accordingly, it is hereby **ORDERED**:

1.   The defendants' motions to dismiss (Doc. 62; Doc. 63; Doc. 65) are **GRANTED**. Plaintiff's amended complaint is dismissed for failure to state a claim on which relief can be granted and

for failure to comply with Rules Eight and Ten of the Federal Rules of Civil Procedure.

2.    With no remaining defendants or claims in this action, the **Clerk of Court** is directed to terminate all pending motions, enter judgment in favor of the defendants, and close this case.

3.    Any appeal of this order would not be taken in good faith under Rule 24(a)(3) of the Federal Rules of Appellate Procedure.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___2nd___ day of December, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Bernard David Gold
Counsel of Record